# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| DENISE BRAHAM, KARLA PUCKETT, DEVONNA HOBBIE, and KIMBERLY LAWTON, individually and as representatives of a class of participants and beneficiaries on behalf of the LABORATORY CORPORATION OF AMERICA HOLDINGS GROUP BENEFITS PLAN, <br><br> *Plaintiffs,* <br><br> vs. <br><br> LABORATORY CORPORATION OF AMERICA HOLDINGS, WILLIS TOWERS WATSON US LLC, and JOHN DOES 1–20, <br><br> *Defendants.* | 1:26-cv-00455-TDS-JGM |

**<u>BRIEF IN SUPPORT OF DEFENDANT LABORATORY CORPORATION OF AMERICA HOLDINGS'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1) AND FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)</u>**

# **TABLE OF CONTENTS**

I.  Introduction.................................................................................................................1

II.  Background.................................................................................................................3

III.  Standards of Review.................................................................................................5

IV.  Argument...................................................................................................................6

    A. The Complaint Fails Every Element of Article III Standing. ..................................6

       1.  Plaintiffs Allege No Concrete Injury. .................................................................7

       2.  Plaintiffs Do Not Plausibly Trace Any Alleged Injury to Labcorp. .................12

       3.  The Relief Plaintiffs Seek Would Not Redress Their Alleged Injury. .............13

    B. Plaintiffs Do Not Allege an Imprudent Fiduciary Process.....................................14

       1.  Plaintiffs Offer No Meaningful Benchmark for Their "Excessive Premium" Theory. ...............................................................................................................15

       2.  The Complaint Identifies No Circumstances Suggesting Imprudence.............16

    C. Plaintiffs Fail to Plead *Any* Element of a Prohibited Transaction..........................20

       1.  Plaintiffs Do Not Allege a Transaction Between the Plan and a Party in Interest..............................................................................................................20

       2.  The Alleged Commission Payments Did Not Involve Plan Assets..................21

       3.  Plaintiffs Do Not Allege That Labcorp Acted as a Fiduciary in Causing the Transaction.......................................................................................................21

    D. Plaintiffs Seek Relief That ERISA Does Not Authorize.......................................22

V.  CONCLUSION..........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Advanced Salon Visions, Inc. v. Lincoln Benefit Life Co.*,
   No. 08-cv-2346, 2010 WL 3341803 (S.D. Cal. Aug. 25, 2010) ...................................... 5

*Am. Freedom Law Ctr. v. Obama*,
   106 F. Supp. 3d 104 (D.D.C. 2015) ................................................................. 12

*Am. Freedom Law Ctr. v. Obama*,
   821 F.3d 44 (D.C. Cir. 2016) ....................................................................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................... 6

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ........................................................................ 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 6

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ........................................................................ 19

*Butler v. Obama*,
   814 F. Supp. 2d 230 (E.D.N.Y. 2011) .............................................................. 12

*California v. Texas*,
   593 U.S. 659 (2021) .................................................................................... 12

*Collins v. Ne. Grocery, Inc.*,
   No. 24-2339-CV, 2025 WL 2383710 (2d Cir. Aug. 18, 2025) ............................... 17, 19

*Davis ex rel. Old Dominion 401(k) Ret. Plan v. Old Dominion Freight Line, Inc.*,
   No. 1:22CV990, 2023 WL 5751524 (M.D.N.C. Sept. 6, 2023) .................................. 9

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) ........................................................................ 23

*DiFelice v. U.S. Airways, Inc.*,
   497 F.3d 410 (4th Cir. 2007) ........................................................................ 22

Case 1:26-cv-00455-TDS-JGM    Document 68    Filed 06/16/26    Page 3 of 33

*Dzinglski v. Weirton Steel Corp.*,
875 F.2d 1075 (4th Cir. 1989)................................................................................17

*Enstrom v. SAS Inst. Inc.*,
820 F. Supp. 3d 410 (E.D.N.C. 2026)......................................................................15

*Enstrom v. SAS Inst.*,
No. 5:24-CV-105-D, 2025 WL 685219 (E.D.N.C. Mar. 3, 2025)...............................18

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .........................................................................................12, 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*,
528 U.S. 167 (2000) ...............................................................................................13

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
629 F. Supp. 3d 352 (M.D.N.C. 2022)......................................................................11

*George v. Duke Energy Ret. Cash Balance Plan*,
560 F. Supp. 2d 444 (D.S.C. 2008)............................................................................7

*Gordon v. CIGNA Corp.*,
890 F.3d 463 (4th Cir. 2018)...................................................................................21

*Hall v. Cap. One Fin. Corp.*,
No. 1:22-CV-00857-MSN-JFA, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)..............19

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) .................................................................................................8

*In re Duke Energy ERISA Litig.*,
281 F. Supp. 2d 786 (W.D.N.C. 2003) .....................................................................19

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
No. 1:21-cv-269 (MSN/JFA), 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ..............10

*Kendall v. Pharm. Prod. Dev., LLC*,
No. 7:20-CV-71-D, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021)..............................19

*Konya v. Lockheed Martin Corp.*,
No. CV 24-750-BAH, 2025 WL 2050997 (D. Md. July 22, 2025)................................7

*Konya v. Lockheed Martin Corp.*,
No. CV 24-750-BAH, 2025 WL 962066 (D. Md. Mar. 28, 2025) .................................7

iii

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ................................................................................................ 20, 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................. 12, 13

*Mahoney v. J.J. Weiser & Co.*, Inc.,
   564 F. Supp. 2d 248 (S.D.N.Y. 2008) ........................................................................... 5

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ..................................................................................................... 22

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) .................................................................................... 16

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) ....................................................................................... 10

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*,
   577 U.S. 136 (2016) ..................................................................................................... 22

*N.R. v. Raytheon Co.*,
   24 F.4th 740 (1st Cir. 2022) ........................................................................................ 23

*Nat'l All. for Accessibility, Inc. v. Big Lots Stores, Inc.*,
   No. 1:11–cv–941, 2012 WL 1440226 (M.D.N.C. Apr. 26, 2012) .............................. 5, 6

*Navarro v. Wells Fargo & Co.*,
   No. 24-cv-3043, 2026 WL 591454 (D. Minn. Mar. 3, 2026) ........................................ 8

*Peeler v. Bayada Home Health Care, Inc.*,
   No. 1:24-cv-00231-MR, 2026 WL 208630 (W.D.N.C. Jan. 27, 2026) ................... 16, 19

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ......................................................................................... 19

*Rouse v. Fader*,
   171 F.4th 272 (4th Cir. 2026) ...................................................................................... 12

*Scott v. UnitedHealth Grp., Inc.*,
   540 F. Supp. 3d 857 (D. Minn. 2021) ............................................................................ 8

iv

*Scott v. UnitedHealth Grp., Inc.*,
  No. 26-1620 (8th Cir. Apr. 3, 2026) ........................................................................ 8

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
  547 U.S. 356 (2006) ...................................................................................................22

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .....................................................................................................7

*Stana v. SAS Inst. Inc.*,
  No. 26-1305 (4th Cir. Mar. 18, 2026) .......................................................................15

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020) ...........................................................................................2, 8, 9, 10

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015) .....................................................................................................9

*Trauernicht v. Genworth Fin. Inc.*,
  169 F.4th 459 (4th Cir. 2026)..........................................................................8, 9, 22, 23

*Tullgren v. Hamilton*,
  No. 1:22-cv-00856-MSN-IDD, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ...............15

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
  62 F.4th 517 (9th Cir. 2023)........................................................................................8

**Statutes**

29 U.S.C. § 1002(21)(A) ..................................................................................................22

29 U.S.C. § 1002(34)..........................................................................................................9

29 U.S.C. § 1002(35)..........................................................................................................7

29 U.S.C. § 1104 ..............................................................................................................14

29 U.S.C. § 1106(a)(1) ...................................................................................19, 20, 21, 22

29 U.S.C. § 1132 ....................................................................................................3, 22, 23

29 U.S.C. § 1132(a)(3) ...........................................................................................3, 22, 23

**Rules**

Fed. R. Civ. P. 8..................................................................................................................6

v

Fed. R. Civ. P. 12(b)(1) ..............................................................................................1, 5

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 6, 14

**Other Authorities**

1 ERISA Prac. & Proc. § 2:5 (Dec. 2025)......................................................................7

**Constitution**

U.S. Const. art. III..................................................................................................*passim*

Case 1:26-cv-00455-TDS-JGM     Document 68     Filed 06/16/26     Page 7 of 33

Defendant Laboratory Corporation of America Holdings ("Labcorp") respectfully moves to dismiss Plaintiffs' Complaint ("Compl.") for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## I.    Introduction

Voluntary benefits insurance ("VBI") is exactly that—voluntary. Employees may choose to purchase this optional coverage, with their own money, to receive fixed cash benefits from third party insurance companies for events such as accidents, hospitalization, or critical illness, or decline it if they decide the coverage is not worth the cost.

Those fixed benefits do not vary with the Plan's investment performance or overall cost structure; participants either receive the promised payout upon a covered event or they do not. That makes VBI a type of defined *benefit* plan, rather than a defined *contribution* plan, where benefits depend on the value of participants' individual accounts and are directly affected by fees, expenses, and investment performance.

Plaintiffs elected to enroll in Laboratory Corporation of America Holdings Group Benefits Plan's (the "Plan's") VBI program but now regret that choice, claiming they "were injured because they overpaid for premiums." Compl. ¶ 135. One might expect a complaint premised on such a claim to allege what premiums participants actually paid and compare them to premiums charged in similar plans, in order to show how much they were supposedly overcharged—or that they were even overcharged at all. The Complaint's conclusory allegations do neither.

1

Instead, Plaintiffs substitute rhetoric for substance, devoting page after page to arguing that the VBI program's insurer paid too much in broker commissions and had too low a "loss ratio"—an industry metric measuring *insurer* profitability across an entire line of business (i.e., large- and small-group, and individual markets). Those metrics are irrelevant to the question at hand: whether the *premiums* charged to *Plan participants* were too high. But Plaintiffs' own allegations reveal that Labcorp's premiums were actually comparable to—and often lower than—those in the plans that Plaintiffs identify as comparators.

Plaintiffs thus lack Article III standing twice over. First, where participants in a plan providing fixed, defined benefits such as this one receive the benefits they were promised, they lack standing to challenge the plan's management. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540, 543–46 (2020). Second, Plaintiffs have not alleged any financial injury at all. Either defect should end this lawsuit.

The Complaint also fails to state a claim for breach of fiduciary duty under ERISA. While Plaintiffs fixate on broker commissions and loss ratios, the Complaint provides no meaningful benchmark for determining whether the *premiums* participants chose to pay were excessive. And even assuming that commissions and loss ratios were relevant to that inquiry, the Complaint provides no benchmark suggesting those metrics were out of line.

Plaintiffs also fail to plead a prohibited transaction under ERISA. The only "transaction" they identify is the insurer's payment of commissions to the broker—a transaction between third parties, not the Plan. It did not involve Plan assets, because once

2

premiums are paid to the insurer they become the insurer's property. And the Complaint does not plausibly allege that Labcorp caused the payment.

The relief Plaintiffs seek is likewise unavailable under ERISA's civil enforcement provisions. Section 502(a)(2) permits suits only to remedy losses to the plan as a whole, yet Plaintiffs allege only that certain participants who elected voluntary coverage supposedly overpaid premiums. And Section 502(a)(3) authorizes only equitable relief tied to specific property in a defendant's possession, but Plaintiffs seek to hold Labcorp liable for money it never received.

At bottom, Plaintiffs never plausibly allege the one thing their case requires: that participants who voluntarily elected this optional coverage paid too much for it. The Complaint therefore fails to establish standing or state a claim and should be dismissed.

## II.    Background

Labcorp provides its employees with a comprehensive package of health and welfare benefits, including traditional medical coverage and other core protections designed to address employees' basic healthcare needs. Recognizing that employees' circumstances and risk preferences vary, Labcorp also offers optional voluntary benefits insurance ("VBI") that employees may elect if they wish to obtain additional protection beyond those core benefits.

While it is under no obligation to do so, Labcorp is among the increasing number of employers that offer voluntary benefits such as accident, critical illness, and hospital indemnity insurance as supplements to traditional health coverage. Compl. ¶¶ 38, 47–50.

3

These policies are offered and underwritten by third-party insurers and pay fixed cash benefits when specified events occur—such as diagnoses of certain illnesses or hospital stays—providing additional financial support for expenses that traditional medical coverage may not fully address. *Id.* ¶¶ 39–46. In that respect, the coverage functions like a defined-benefit arrangement: participants who experience a covered event receive the fixed amount specified in the policy, no matter what. *Id.*

Drawing on its market expertise, the broker helps review potential products and structure a program intended to deliver meaningful value to participants by offering employees a range of optional coverage choices. The insurance carrier, ReliaStar Life Insurance Company ("ReliaStar"), underwrites the policies, establishes premium rates, and pays benefits when covered events occur. *Id.* ¶¶ 101–102.

Participation in the VBI program is entirely voluntary. During open enrollment, employees decide whether to enroll and, if so, which policies and coverage levels to select. Unlike Labcorp's core health care benefits, which are subsidized by the company, employees who elect VBI coverage pay the full cost of the premiums through payroll deductions. *Id.* ¶ 38. Prior to enrollment, employees are provided the premiums, coverage levels, and policy terms so they can evaluate the available options and decide whether the additional protection fits their needs and financial circumstances. The program renews each year, allowing employees dissatisfied with the coverage or its cost to reconsider their decision annually.

4

As is common in voluntary insurance arrangements, the insurer pays the broker a commission out of the premiums collected. The amount of those commissions is negotiated privately between the insurer and the broker. These commissions compensate the broker for services such as customer acquisition, coordinating enrollment, handling policy renewals, and administering the coverage, among other things. Courts have consistently recognized that such compensation does not, without more, render a broker a fiduciary. *Advanced Salon Visions, Inc. v. Lincoln Benefit Life Co.*, No. 08-cv-2346, 2010 WL 3341803, at *7–8 (S.D. Cal. Aug. 25, 2010) (collecting cases). That is because the broker lacks the requisite control over plan assets or decision-making authority—specifically, it does not have the discretion to select insurance policies or approve the payment of premiums. *Mahoney v. J.J. Weiser & Co.*, Inc., 564 F. Supp. 2d 248, 257 (S.D.N.Y. 2008).

The program operates at significant scale, indicating that many Labcorp employees value the supplemental coverage it provides. The number of lives covered by the VBI often approaches 100,000—exceeding the number of employees covered by Labcorp's core benefits programs—reflecting that many employees elected to enroll not only themselves but also their beneficiaries or dependents. Compl. ¶¶ 98–99.

### III.    Standards of Review

A court must dismiss an action for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when it lacks the statutory authority or constitutional power to adjudicate the case. *Nat'l All. for Accessibility, Inc. v. Big Lots Stores, Inc.*, No. 1:11–cv–941, 2012 WL 1440226, at *3 (M.D.N.C. Apr. 26, 2012). The

5

plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Id*. To survive dismissal for lack of standing, the plaintiffs' complaint must contain sufficient factual allegations of an injury resulting from the defendants' conduct, accepted as true, to state a claim for relief that is plausible on its face. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).

A motion to dismiss under Rule 12(b)(6) tests whether the complaint states a plausible claim for relief. Rule 8 does not require detailed factual allegations, but it demands more than "labels and conclusions" or a "formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive dismissal, a complaint must plead enough factual matter to permit a reasonable inference that the defendant is liable. *Id.* at 556. Courts therefore disregard legal conclusions and conclusory assertions unsupported by facts, which are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The remaining factual allegations must plausibly suggest— not merely be consistent with—liability, assessed in light of "judicial experience and common sense." *Id.* at 679. Allegations that leave misconduct only possible, or equally consistent with lawful conduct, do not state a claim. *Twombly*, 550 U.S. at 557.

## IV.    Argument

### A.    The Complaint Fails Every Element of Article III Standing.

Plaintiffs cannot establish standing. Article III requires a plaintiff to establish three elements: (1) an injury in fact, (2) causation—a connection between the alleged injury and the defendant's conduct—and (3) redressability—that the injury is likely to be remedied

6

by a favorable judicial decision. These requirements form the "irreducible constitutional minimum of standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks omitted). Plaintiffs must satisfy each element, but the Complaint satisfies none.

### 1. Plaintiffs Allege No Concrete Injury.

Plaintiffs' claims collapse at the threshold because they fail to allege the "first and foremost" requirement of Article III standing—an injury in fact. *Id.* at 338–39. Their theory is that participants "overpaid for premiums." Compl. ¶ 135. But Plaintiffs do not allege that any participant failed to receive the fixed benefits promised under the policies, and they plead no facts showing what the premiums were or that they exceeded those charged in comparable plans. Each defect independently defeats standing.

First, as Plaintiffs acknowledge (*id.* ¶¶ 39, 43–46), the VBI program pays a fixed amount triggered by specified events such as accidents or hospitalization,[1] making it a defined benefit plan as "defined benefit plans include all plans that do not meet the definition of a defined contribution plan." *George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 450 n.2 (D.S.C. 2008); *see also, e.g.*, 29 U.S.C. § 1002(35) (stating that a defined-benefit plan is "a pension plan other than an individual account plan"); *Konya v. Lockheed Martin Corp.*, No. CV 24-750-BAH, 2025 WL 962066, at *11 (D. Md. Mar. 28, 2025), *motion to certify appeal granted*, No. CV 24-750-BAH, 2025 WL 2050997 (D. Md. July 22, 2025) (applying healthcare plan analysis to defined-benefit case); *Navarro*

---

[1] *See also* 1 ERISA Prac. & Proc. § 2:5 (Dec. 2025) ("[A] welfare plan provides benefits upon the occurrence of various specified contingencies.").

*v. Wells Fargo & Co.*, No. 24-cv-3043, 2026 WL 591454, at *10 (D. Minn. Mar. 3, 2026) (holding that a health plan "is 'closely analogous' to a defined-benefit plan in which 'participants are entitled to their contractually defined benefits regardless of the value of the Plan's assets'" (citation modified) (quoting *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 864 (D. Minn. 2021))), *appeal filed*, No. 26-1620 (8th Cir. Apr. 3, 2026); *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 528 (9th Cir. 2023) (noting a benefits program "similarly provides a fixed set of benefits as promised in plan documents"). That admission is dispositive on standing under *Thole*.

In *Thole*, the Supreme Court explained that, in a defined benefit plan, participants are entitled to a fixed payment that "do[es] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Id.* at 540. This is because in defined-benefit plans, "plan assets are undifferentiated and held collectively in trust" and not "allocated to individual accounts." *Trauernicht v. Genworth Fin. Inc.*, 169 F.4th 459, 467–68 (4th Cir. 2026). As a result, participants who receive all promised benefits suffer no concrete injury from alleged mismanagement of plan assets. Win or lose, "they would still receive the exact same monthly benefits." *Thole*, 590 U.S. at 541.

Defined contribution plans like 401(k)s operate in the opposite way. There, "participating employees maintain individual investment accounts" and "choose[] how to invest her funds[.]" *Hughes v. Nw. Univ.*, 595 U.S. 170, 173 (2022); *see also Trauernicht*, 169 F.4th at 468 (noting that in a "defined contribution plan, where the plan assets are allocated to individual accounts, . . . a participant's 'benefits [are] based solely upon the

amount' held in his individual account" (quoting 29 U.S.C. § 1002(34))). This means that participants' benefits are "tied to the value of [participants'] accounts" and "turn on the plan fiduciaries' particular investment decisions." *Thole*, 590 U.S. at 540. Fees, expenses, and investment performance directly affect account balances and thus the ultimate payout. That is why excessive-fee and underperformance claims arise in the defined contribution context: mismanagement reduces what participants actually receive. *See Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015) ("Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a *defined-contribution plan*." (emphasis added)). Such plans are "substantially distinct" from welfare plans or defined-benefit plans. *Trauernicht*, 169 F.4th at 463, 467; *see also Davis ex rel. Old Dominion 401(k) Ret. Plan v. Old Dominion Freight Line, Inc.*, No. 1:22CV990, 2023 WL 5751524, at *5 (M.D.N.C. Sept. 6, 2023) (describing "distinction between defined benefit plans and defined contribution plans in the context of finding an individual injury that satisfies Article III standing pursuant to ERISA").

Plaintiffs allege none of the injury that sufficed for standing in *Thole*—they do not claim that any promised benefit was denied or underpaid, or that future benefits are at risk. Their only allegation is that premiums were supposedly too high. But Plaintiffs agreed to those premiums when they elected to enroll in optional VBI coverage, and by all accounts, they got what they paid for. Buyer's remorse over the price voluntarily paid for fixed benefits is not an injury in fact. *See Thole*, 590 U.S. at 547 ("There is no ERISA exception to Article III.").

9

Even if Plaintiffs could overcome *Thole*, they lack standing for a second reason: they have not adequately alleged that they suffered any injury from paying "excessive" premiums. Indeed, aside from the named plaintiffs themselves, Compl. ¶¶ 13–16,[2] the Complaint never alleges what premiums participants actually paid or compares them to premiums charged in comparable VBI programs offered by other employers. Without allegations identifying both the price paid and some benchmark showing it should have been lower, Plaintiffs have not alleged any facts plausibly suggesting they suffered economic injury; thus, they lack Article III standing. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 707–08 (9th Cir. 2020) (rejecting standing based on alleged overpayment where plaintiff failed to allege that the product was "worth *objectively less* than what she paid" (emphasis added)); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 WL 10197651, at *10 (E.D. Va. Oct. 17, 2022) (rejecting standing based on alleged overpayment when plaintiffs had not "set forth sufficient factual allegations that, if proven true, would permit a fact finder to determine that . . . the product was worth less than the purchase price").

While Plaintiffs avoid making the comparison their claim requires—what participants actually paid and how those premiums compared to similar VBI programs—

---

[2] Plaintiffs allege that premiums fell within certain monthly "ranges," *id.* ¶ 106, but do not explain the source of those figures. They appear to be calculated simply by dividing the named Plaintiffs' alleged annual premiums by twelve and rounding the results. *See id.* ¶¶ 13–16. The asserted "ranges" therefore reflect nothing more than arithmetic applied to three individuals' policies rather than allegations about premiums paid by participants generally or the program's pricing structure.

the very public disclosures they argue show that commissions here "dwarfed" those in

"similar plans," Compl. ¶ 151, answer that question.

**Average Per-Participant Premium**[3]

| Plan | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | Average |
|---|---|---|---|---|---|---|---|
| **Labcorp** | $152 | $116 | $405 | ***$107*** | ***$119*** | ***$115*** | $169 |
| **Broadcom** | $129 | $87 | $87 | $127 | $129 | $154 | $119 |
| **Home Depot** | -- | $233 | $227 | $239 | $245 | $248 | $238 |
| **Advocate** | -- | $218 | $208 | $194 | $227 | $126 | $195 |
| **Mentor** | $695 | $756 | $755 | $881 | $692 | -- | $756 |

Regardless of any allegedly excessive commissions, Labcorp participants ultimately

paid premiums competitive with—and often *substantially lower* than—the supposedly

comparable plans Plaintiffs cite. Indeed, the Labcorp VBI program has had the *lowest* per-

---

[3] Average per-participant premium reflects the "[t]otal premiums or subscription charges paid to carrier" (Box 10a) divided by the "[a]pproximate number of persons covered at end of policy or contract year" (Box 1(e)), as reported in each plan's annual Form 5500. *See* Ex. A at 1, 4–5, 8–9, 12–13, 16–17, 20–21, 24–25, 28–29, 32–33, 36–37, 40–41, 44–45, 48–49, 52–53, 56–57, 60–61, 64–65, 68–69, 72–73, 76–77, 80–81, 84–85, 88–89, 92–93, 96–97, 100–01, 104–05, 108–09, 112. The Court may consider excerpts of these filings because they are publicly filed government records subject to judicial notice. *See, e.g.*, *Garnick v. Wake Forest Univ. Baptist Med. Ctr*., 629 F. Supp. 3d 352, 364 n.5 (M.D.N.C. 2022) ("Form 5500s are unquestionably matters of public record."). They are also incorporated by reference because they are "integral to and explicitly relied on in the . . . [C]omplaint." *Id.* (citation omitted). Plaintiffs' core allegation that WTW's commissions were "excessive" is derived from the same Form 5500 disclosures, from which they calculate "commissions as a percentage of premiums." *See* Compl. ¶¶ 151–56. The Court may therefore consider relevant excerpts of those same filings in assessing the plausibility of Plaintiffs' allegations.

participant premium in the three most recent years and the *second lowest* average per-participant premium over the last six years.

Even assuming these other plans are "similar," the disclosures Plaintiffs rely on foreclose any plausible claim that participants "overpaid for premiums."

### 2. Plaintiffs Do Not Plausibly Trace Any Alleged Injury to Labcorp.

Even if Plaintiffs had plausibly alleged an injury, they fail to satisfy the second requirement of Article III standing: causation, or that the alleged injury be "fairly traceable to the defendant's allegedly unlawful conduct." *California v. Texas*, 593 U.S. 659, 669 (2021). Causation cannot rest on speculation. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 389 (2024). And an alleged injury must be "traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court." *Rouse v. Fader*, 171 F.4th 272, 280 (4th Cir. 2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (omissions in original).

That principle defeats Plaintiffs' theory. The Complaint repeatedly alleges that "Labcorp caused the Plan to engage in a transaction with WTW." Compl. ¶¶ 116–18, 209–11. Yet Plaintiffs claim injury from a different transaction altogether—ReliaStar's decision, as the VBI insurer, to remit commissions to WTW. *See id.* ¶ 77 ("WTW's commissions were not paid by Labcorp . . . but by the insurance company[.]"). ReliaStar is an independent insurer that determines how to price its products and compensate brokers who market them, including what portion of premiums it retains as revenue and what portion it pays as broker commissions. *See Butler v. Obama*, 814 F. Supp. 2d 230, 240

(E.D.N.Y. 2011); *Am. Freedom Law Ctr. v. Obama*, 106 F. Supp. 3d 104, 109 (D.D.C. 2015), *aff'd*, 821 F.3d 44 (D.C. Cir. 2016).

The Complaint alleges no causal mechanism by which Labcorp controlled or directed those decisions between ReliaStar and WTW. Instead, Plaintiffs speculate that broker commissions necessarily inflate premiums and that reducing commissions would lower premiums "dollar-for-dollar." Compl. ¶¶ 76, 150, 157. That theory layers assumption upon assumption—first that Labcorp controlled ReliaStar's compensation decisions, second that ReliaStar would lower its pricing if commissions were reduced, and third that any reduction would be "dollar-for-dollar." The Complaint alleges no facts supporting any of those assumptions.

Because the alleged injury turns on speculation about independent decisions of a third party not before the Court, Plaintiffs has not plausibly traced it to Labcorp's conduct.

### 3. The Relief Plaintiffs Seek Would Not Redress Their Alleged Injury.

For the same reasons Plaintiffs cannot establish causation, they also cannot establish redressability. Their theory assumes that ReliaStar—an independent insurer not before the Court—would reduce premiums "dollar-for-dollar" if broker commissions were lower. Compl. ¶¶ 76, 150, 157. Article III standing cannot rest on such speculation about the economic choices of third parties. *See All. for Hippocratic Med.*, 602 U.S. at 380; *Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan*, 504 U.S. at 562.

And Plaintiffs' own allegations show their theory cannot be right. The supposedly "similar plans" they identify all feature lower broker commissions yet generally higher per-participant premiums than the Labcorp program. If commissions truly affected premiums "dollar for dollar," as Plaintiffs theorize, those plans should have lower premiums. They do not. *See supra* at 11.

Because Plaintiffs' theory of redressability depends on implausible speculation about how a third party not before the Court might price its products, Article III standing is lacking.

### B. Plaintiffs Do Not Allege an Imprudent Fiduciary Process.

Even if Plaintiffs could establish Article III standing, their claim for breach of fiduciary duty under ERISA section 404 would still fail on the merits. Fed. R. Civ. P. 12(b)(6). To state such a claim, Plaintiffs must allege facts plausibly suggesting that the Plan's fiduciaries acted imprudently in selecting or administering the voluntary benefits program. They do not. The Complaint contains no specific allegations about Labcorp's fiduciary process. Instead, Plaintiffs invite the Court to infer imprudence from comparisons to allegedly similar plans and from a handful of supposed warning signs. Neither suffices: the alleged comparators do not provide the "sound basis for comparison" required to plead imprudence, and the supposed warning signs are either consistent with prudent plan administration or wholly irrelevant.

14

### 1. Plaintiffs Offer No Meaningful Benchmark for Their "Excessive Premium" Theory.

Plaintiffs' core allegation is that participants paid "excessive and unreasonable premiums." Compl. ¶ 3; *see also id.* ¶ 142. Yet Plaintiffs never compare the premiums participants actually paid to premiums charged in comparable plans. Instead, they compare WTW's broker *commissions* across other plans. *Id.* ¶¶ 105, 138–39, 159–62. As discussed above in connection with standing, that comparison misses the mark. Premiums are what participants pay for coverage; commissions reflect how third-party insurers compensate brokers who market and service the insurer's products. By comparing commissions while alleging injury from supposedly excessive premiums, Plaintiffs fail to measure the very thing they claim was excessive: premiums. That mismatch alone defeats Plaintiffs' attempt to plead imprudence. *See, e.g.*, *Enstrom v. SAS Inst. Inc.*, 820 F. Supp. 3d 410, 420 (E.D.N.C. 2026) ("[a] meaningful benchmark must provide a 'sound basis for comparison'"), *appeal filed*, *Stana v. SAS Inst. Inc.*, No. 26-1305 (4th Cir. Mar. 18, 2026); *Tullgren v. Hamilton*, No. 1:22-cv-00856-MSN-IDD, 2023 WL 2307615, at *6 (E.D. Va. Mar. 1, 2023) (granting motion to dismiss "for the additional and independent reason that Plaintiff has not pled meaningful benchmarks against which this Court can assess his allegations of the fiduciaries' imprudence"). Moreover, the correct comparison would have shown that Labcorp's premiums were competitive with—and frequently lower than—the allegedly "similar plans" Plaintiffs themselves selected. *See supra* at 11.

Compounding Plaintiffs' deficiencies is the fact that the four plans Plaintiffs selected as comparator plans are not, if fact, similar to the Labcorp Plan. A valid benchmark

15

requires plans that are materially alike in relevant respects. *See Enstrom*, 820 F. Supp. 3d at 420–22. The four plans Plaintiffs identify appear to share only one feature—that WTW served as broker—and generally cover far fewer participants than the Labcorp program insures, which approaches 100,000 lives. Compl. ¶¶ 159–62. Nor do the plans offer comparable coverage: while Labcorp's program includes accident, critical illness, and hospital indemnity policies, *id.* ¶ 131, one comparator includes only a critical illness policy, *id.* ¶ 153, and two others bundle those policies with additional offerings such as a "Compass Care Package" and "individual excess risk composite policies." *Id.* ¶¶ 154–55. These are not like-for-like comparisons but different bundles of coverage with different pricing structures and services.

In the end, all Plaintiffs have managed to allege is that Labcorp's insurer-paid commissions were higher but premiums generally lower than a handful of differently sized, differently constituted plans that shared a common broker. That is not a meaningful benchmark and cannot support an inference of imprudence.

### 2. The Complaint Identifies No Circumstances Suggesting Imprudence.

Plaintiffs try to shore up their inapt comparators with circumstantial allegations about Labcorp's fiduciary process. None move the needle. First, the fact that ReliaStar remained the insurer and WTW remained the broker throughout the class period does not imply misconduct. *Id.* ¶ 110. ERISA does not require fiduciaries to conduct periodic requests for proposals, and courts routinely reject the notion that the absence of competitive bidding implies imprudence. *See, e.g.*, *Peeler v. Bayada Home Health Care, Inc.*, No. 1:24-

16

cv-00231-MR, 2026 WL 208630, at *9 (W.D.N.C. Jan. 27, 2026) ("[A] failure to regularly solicit quotes or competitive bids from service providers does not necessarily give rise to an imprudence claim" (internal citations omitted; collecting cases)); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1156 (10th Cir. 2023) (affirming district court's dismissal that found that "nothing in ERISA requires a fiduciary to obtain competitive bids at any regular interval"). Nor are fiduciaries required to periodically replace effective service providers simply to avoid the whiff of imprudence. And ReliaStar's independent conduct in paying WTW its bargained-for commissions does not implicate any fiduciary act by Labcorp. *See Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1080 (4th Cir. 1989) ("To adhere to the plan is not a breach of fiduciary duty.").

Second, even if broker commissions were relevant to whether premiums were excessive—which Plaintiffs never plausibly explain—the commissions they challenge fall within the range Plaintiffs themselves describe as "typical" for voluntary benefits programs. Plaintiffs allege that broker commissions in such programs generally range from 15% to 55% of premiums. Compl. ¶ 80.[4] Yet the commissions they attribute to the Labcorp program average 28.9%— in the bottom half of that range. *Id.* ¶ 131. Allegations that a fee

---

[4] The source for Plaintiffs' claim that voluntary insurance offers "commission[s] . . . of an additional 15 percent to 55 percent, depending on the line of insurance offered" is an unvetted blog purportedly written by Dagny Taggart—a character from Ayn Rand's *Atlas Shrugged*. Compl. ¶ 80 & n.19. The same source also supplies Plaintiffs' assertions that the insurance industry views VBI programs as a "quick fix" and that insurers can afford high-commission products only by raising premiums or denying claims. *Id.* ¶¶ 79, 81. Despite its questionable provenance, it is Plaintiffs' only source for their assertions about typical broker commissions for voluntary insurance.

falls within an industry-standard range do not plausibly suggest imprudence. *See Collins v. Ne. Grocery, Inc.*, No. 24-2339-CV, 2025 WL 2383710, at *3 (2d Cir. Aug. 18, 2025).

Finally, Plaintiffs' fixation on "loss ratios" is a red herring. Loss ratios measure the relationship between premiums collected by an insurer across *an entire line of business* (i.e., in the small and large-group markets, and in the individual market) and claims paid by the insurer in the respective market—*i.e.*, the insurer's profitability—not whether premiums or broker commissions were excessive, and not for a specific policy like the VBI program. Compl. ¶¶ 86–97. Plaintiffs attempt to give the metric legal significance by citing statutory loss-ratio requirements applicable to other types of insurance, such as medical coverage under the Affordable Care Act, but concede those requirements do *not* apply to the voluntary benefits policies at issue here. *Id.* ¶¶ 88–93.

In any event, Plaintiffs' loss-ratio theory rests on speculation and faulty math. They assert that because WTW's commissions averaged roughly 28% of premiums, it was "impossible" for participants to obtain better than a 75% loss ratio, and then speculate that the program's "true historical loss ratio" must have been below 50%. Compl. ¶¶ 139–40. But there is no mathematical reason a loss ratio cannot exceed 100%: insurers pool premiums across policies and pay claims from broader reserves and investment income, so claims in a given period can easily exceed premiums collected. And Plaintiffs cannot possibly know any loss ratio without knowing the claims actually paid under the policies— a figure they do not allege. Even if the Labcorp VBI program's specific loss ratio mattered—and it does not—the 50% figure is pure guesswork.

18

In short, Plaintiffs ask the Court to infer an imprudent fiduciary process from facts either consistent with prudent plan administration or wholly irrelevant to the issue at hand. This is not sufficient. *See Enstrom v. SAS Inst.*, No. 5:24-CV-105-D, 2025 WL 685219, at *3 (E.D.N.C. Mar. 3, 2025) ("An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009))). ERISA requires allegations that allow the "court to infer more than the *mere possibility* of misconduct." *Hall v. Cap. One Fin. Corp.*, No. 1:22-CV-00857-MSN-JFA, 2023 WL 2333304, at *4 (E.D. Va. Mar. 1, 2023) (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013) (emphasis in original)). Because the Complaint falls short of that standard, the fiduciary-breach claim against Labcorp in Count I should be dismissed.[5]

---

[5] Plaintiffs' failure-to-monitor claim necessarily fails as well, as it is derivative of the underlying fiduciary breach claim. *See Peeler*, 2026 WL 208630, at *12 ("[B]ecause Plaintiffs did not plausibly allege that the Committee acted imprudently, their duty to monitor claim predicated on an underlying breach of the duty of prudence fail[s] as a matter of law." (quoting *Collins*, 2025 WL 2383710, at *5)); *Kendall v. Pharm. Prod. Dev., LLC*, No. 7:20-CV-71-D, 2021 WL 1231415, at *11 (E.D.N.C. Mar. 31, 2021) ("A claim for the failure to monitor derives from and depends on an 'underlying breach of fiduciary duty cognizable under ERISA." (quoting *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003))). Count II should therefore be dismissed as well.

## C.    Plaintiffs Fail to Plead *Any* Element of a Prohibited Transaction.

Plaintiffs' prohibited-transaction claim under ERISA section 406(a)(1) fails at the threshold because the Complaint does not plausibly allege a transaction (1) between the plan and a party in interest (2) involving plan assets (3) caused by a fiduciary.

### 1.    Plaintiffs Do Not Allege a Transaction Between the Plan and a Party in Interest.

Section 406(a)(1) prohibits a fiduciary from causing *a plan* to engage in certain transactions with a party in interest. 29 U.S.C. § 1106(a)(1) (emphasis added). The provision targets transactions that pose a heightened risk of misuse of plan property. As the Supreme Court has explained, section 406(a) is designed to prevent "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). The transactions identified in the statute therefore generally involve uses of plan assets that could harm the plan.

The Complaint does not allege such a transaction here. At bottom, Plaintiffs' theory is that participants paid VBI premiums that were allegedly "too high" because of the broker's (WTW's) commissions embedded in those premiums. Compl. ¶¶ 131–36, 150. But Plaintiffs do not allege that the Plan paid any commissions to WTW or otherwise entered into a transaction with WTW involving the commissions at issue. *See, e.g.*, *id.* ¶¶ 104, 131–32, 136. According to the Complaint, those commissions were paid by the insurer, ReliaStar, to the broker, WTW. *Id.* ¶ 77. Thus, the only "transaction" that Plaintiffs identify is between those two parties. Plaintiffs do not allege that the Plan itself paid

20

commissions to WTW or otherwise entered into a transaction with WTW involving the commissions at issue. At most, Plaintiffs allege that Labcorp engaged WTW as a broker, and that Labcorp later selected ReliaStar as its VBI insurer, and that ReliaStar then paid commissions to WTW in exchange for WTW's services. That is not a transaction between the Plan and a party in interest, as section 406(a)(1) requires.

### 2. The Alleged Commission Payments Did Not Involve Plan Assets.

Section 406(a)(1) applies only to transactions involving *plan assets*. *See Lockheed*, 517 U.S. at 893. But the commissions at issue were paid by ReliaStar to WTW out of the insurer's own funds. Compl. ¶ 136 ("[C]ommissions . . . came directly out of Plan participants' premium payments."). And once premiums were paid to ReliaStar for VBI coverage, they became part of ReliaStar's general assets and ceased being Plan assets. *See, e.g.*, *Gordon v. CIGNA Corp.*, 890 F.3d 463, 471 (4th Cir. 2018) ("[P]remiums paid do not constitute Plan assets.").

The commissions therefore represent a payment by the insurer to its broker—not a transfer of plan assets—and cannot support a section 406(a)(1) claim.

### 3. Plaintiffs Do Not Allege That Labcorp Acted as a Fiduciary in Causing the Transaction.

Finally, section 406(a)(1) applies only when a fiduciary *causes* transaction. Plaintiffs do not plausibly allege that Labcorp caused the alleged transaction at all, nor can they: Plaintiffs themselves elected the voluntary VBI coverage that led to the "transaction" at issue.

21

The only transaction Plaintiffs identify is the payment of commissions from ReliaStar to WTW. *See* Compl. ¶ 77. But the Complaint does not allege that Labcorp directed, required, or otherwise caused ReliaStar to make those payments. At most, Plaintiffs allege that Labcorp retained WTW as a broker and ReliaStar as an insurer, which is hardly the same as Labcorp *causing* the insurer to pay commissions to the broker. Thus, Plaintiffs fail to allege that Labcorp acted as a fiduciary with respect to ReliaStar's commission payments to WTW, because Plaintiffs do not allege that Labcorp exercised any "discretionary authority or discretionary control" over those payments. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007) (quoting 29 U.S.C. § 1002(21)(A)).

In short, Plaintiffs' theory depends on a payment between ReliaStar and WTW that (1) was not a transaction with the Plan, (2) did not involve plan assets, (3) was not caused by Labcorp, and (4) relates to VBI coverage that was voluntarily elected by Labcorp employees who independently decided to enroll in VBI coverage. Because Plaintiffs satisfy none of the elements required for a prohibited transaction under section 406(a)(1), their claim prohibited transaction claim against Labcorp in Count III fails as a matter of law.

### D. Plaintiffs Seek Relief That ERISA Does Not Authorize.

Even if Plaintiffs could establish Article III standing and plausibly allege a fiduciary breach, their claims would still fail because the relief they seek is not available under ERISA. Plaintiffs invoke two provisions of ERISA's enforcement scheme: § 502(a)(2) and § 502(a)(3). Each authorizes a different—and limited—form of relief. Section 502(a)(2) permits suits only on behalf of the plan to remedy losses to the plan itself, not

22

individualized injuries to participants. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *Trauernicht*, 169 F.4th at 470. Section 502(a)(3), by contrast, authorizes only equitable relief—such as restitution of specifically identifiable funds in the defendant's possession—not money damages. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363–64 (2006); *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143–45 (2016).

Plaintiffs' theory fits neither provision. Their allegations concern only premiums allegedly paid by employees who elected VBI coverage. The putative class, however, is limited to participants who chose to purchase voluntary policies—not the Plan as a whole— and the Complaint alleges only that certain individuals "overpaid" for those policies. Compl. ¶¶ 13–16, 165. That is not a loss to the Plan as a whole—it is an alleged loss only to certain Plan participants. Section 502(a)(2) protects plans, not individual premium payers. *See Trauernicht*, 169 F.4th at 470; *N.R. v. Raytheon Co.*, 24 F.4th 740, 751 (1st Cir. 2022). Because Plaintiffs allege only individualized payments for coverage they elected, their claim does not seek the plan-wide relief § 502(a)(2) requires.

Section 502(a)(3) fares no better. That provision authorizes only equitable relief— typically restitution of specifically identifiable funds in the defendant's possession. Plaintiffs identify no such fund here. To the contrary, their own allegations make clear that commissions were paid from the insurer, ReliaStar, to the third party broker, WTW—not to Labcorp. Compl. ¶¶ 104, 131–32, 136. And once participants paid premiums to the insurer in exchange for coverage, those funds became the insurer's property, not plan

23

assets. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 657 (9th Cir. 2019). Thus, Labcorp holds no fund to which any plan assets can be traced.

Because Plaintiffs seek neither restoration of plan losses nor equitable restitution of identifiable funds in Labcorp's possession, their claims fall outside ERISA's remedial scheme and must be dismissed.

## V. CONCLUSION

For all these reasons, Plaintiffs' Complaint should be dismissed.

Dated: June 15, 2026

Respectfully submitted,

By: */s/ Mark C. Nielsen*
Mark C. Nielsen
Lars C. Golumbic
William J. Delany
Ross P. McSweeney
Daniel J. Cohen
Colleen J. Harrison
Groom Law Group, Chartered
1701 Pennsylvania Ave., NW, Suite 1200
Washington, DC 20006
Phone: 202-861-6615
Fax: 202-659-4503
mnielsen@groom.com
lgolumbic@groom.com
wdelany@groom.com
rmcsweeney@groom.com
dcohen@groom.com
charrison@groom.com

*/s/ Kasi W. Robinson*
Kasi W. Robinson
N.C. State Bar No. 52439
Brooks, Pierce, McLendon,
Humphrey & Leonard, LLP

24

2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
Tel. (336) 373-8850
Fax (336) 378-1001
krobinson@brookspierce.com

*Counsel for Defendant Laboratory
Corporation of America Holdings*

25

**CERTIFICATE OF WORD COUNT**

I hereby certify that this brief complies with Local Rule 7.3(d) (1) in that it does not exceed 6,250 words in length, including the body of the brief, headings, and footnotes.

This the 15 day of June, 2026.

/s/ *Mark C. Nielsen*
Mark C. Nielsen

**CERTIFICATE OF SERVICE**

I certify that, on June 15, a copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF System and served by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ *Mark C. Nielsen*
Mark C. Nielsen

26